IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN I. SHORT,                                    *
          Plaintiff
                                  *
     v.                                              CIVIL ACTION NO. RWT-13-3176
                                  *
BOBBY P. SHEARIN, et al.,
          Defendants                         *
                                  ******

## MEMORANDUM OPINION

Plaintiff filed the above-captioned civil rights complaint pursuant to 42 U.S.C. §1983 on October 24, 2013. ECF No. 1. Pending is Defendants Warden Bobby P. Shearin, Lt. Bradley Wilt, Mary J. Rose, and Robin Woolford's Motion to Dismiss, or in the alternative Motion for Summary Judgment. ECF No. 23. Plaintiff has responded. ECF Nos. 24 & 26. Upon review of papers and exhibits filed, the Court finds that an oral hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motion to Dismiss, or in the alternative, for Summary Judgment will be granted.

Background

By way of amended complaint, the pro se[1] Plaintiff, confined to the North Branch Correctional Institution (NBCI), a Maryland Division of Corrections (DOC) facility, alleges intentional interference with legal mail which adversely impacted his access to the courts. He also alleges that his administrative remedy request (ARP) and grievance filed with the Inmate Grievance Office (IGO) were improperly handled. ECF Nos. 1 & 11.

---

[1] As a self-represented litigant, Plaintiff is entitled to liberal construction of his pleadings. *See, e.g. Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519 (1972) (requiring liberal construction of pro se pleadings).

Specifically, Plaintiff states that on November 19, 2012, he deposited, in the regular institutional mail, his reply to the response filed in his federal habeas corpus case along with a money voucher for payment of the certified mailing fee. ECF No. 1 at 4. On May 25, 2013, the mailing and voucher were returned to him with a notice indicating that "certified mail can no longer be used when sending out indigent 'NSF' mail according to Attorney General letter dated 4/18/1991. If you exceed your (7) letters per week limit or need additional mailing you must contact your case manager for approval...." *Id.* Plaintiff states he delivered his legal mail to Officer Klink on November 19, 2012, and that Klink advised Plaintiff that he followed procedures and delivered the mail to Sgt. Brewer of Housing Unit 4. Brewer advised Plaintiff that he turned the mail in to the administration building for processing. *Id.*

Plaintiff states that he was under a court ordered deadline which he missed due to the improper handling of his mail. *Id.* He claims that he received a letter from the Court dated December 17, 2012, indicating that his Reply had not been received. *Id.* at 5. Plaintiff states that despite the Government's argument that the case be dismissed as time-barred, and lack of response from Plaintiff, the Court stayed the case pending the outcome of another case then pending before the Court. *Id.* Plaintiff states that the staying of his case would have been prevented had his Reply been considered by the Court. Plaintiff states that two or three days after his case was stayed, he resubmitted his response, via certified mail, and the mailing was sent with no difficulty. *Id.*

Additionally, Plaintiff states that during the time at issue, he had an institutional job and was therefore not considered indigent. *Id.* at 6. He states that any time he sought to mail

something via certified mail but was without funds to pay for same, the money was deducted from his reserve account. He states that "all other certified mail went out with no problem." *Id.*

Plaintiff states that he filed an ARP regarding the mishandling of his mail. He claims that Lt. Wilt, "intentionally, arbitrarily and capriciously" dismissed the ARP as repetitive. *Id.* at 8. Plaintiff claims, however, that the previous ARP he filed was dismissed "on false pretenses" and therefore Wilt should have addressed his second ARP. *Id.* Plaintiff indicates he appealed the dismissal but the Commissioner failed to reply within the prescribed timeframe, so he proceeded to file his grievance with the IGO. *Id.* Plaintiff indicates that his mailings "crossed each other in the mail" and he received a response from the Headquarters Coordinator directing that he resubmit the request within three days. He apparently declined to follow the directive, having already proceeded with his claim to the IGO. *Id.*

Plaintiff claims that Robin Woolford "arbitrarily and capriciously" dismissed his ARP complaint by erroneously failing to address the pending complaint, instead addressing a former complaint which was attached as an exhibit. *Id.* at 9. Woolford advised Plaintiff he failed to exhaust proper procedures and gave him 30 days to do so. Plaintiff responded to Woolford noting Woolford's apparent error, but did not make any effort to exhaust as directed. Plaintiff indicates Woolford's actions demonstrate a pattern of mishandling and censoring his mail. *Id.*

Plaintiff next wrote to Scott Oakley, Executive Director of the IGO, describing the alleged errors made by Woolford. *Id.*  He did not receive any response from Oakley. *Id*. at 10.

Plaintiff states that on October 2, 2013, he submitted documents to be copied to Case Manager White along with a money voucher to pay the cost of the copy work. *Id.* at 11. The copies were not made because the institution was on lock down, and he now says that the

documents have been lost.[2] *Id.* Plaintiff alleges this was done in order to interfere with the filing of the instant case. *Id*. Additionally, Plaintiff claims that Defendants failed to follow applicable laws and regulations in processing his mail and grievances. *Id*. at 12.

By way of amended complaint, Plaintiff alleges that on December 2, 2013, he received what he describes as legal mail from the Maryland State Treasury Department via regular inmate mail. Plaintiff states that this mail should have come through legal mail and been opened only in his presence. ECF No. 11 at 1. Plaintiff opines that Mary Rose, Mail Room Supervisor, intentionally interfered with the processing of his mail. Id. at 2.

Defendants' statement of facts states that Sgt. Brewer and Case Manager White have no recollection of receiving any particular mail from Plaintiff. ECF Nos. 23-2; 23-3. Sgt. Brewer indicates that he routinely signs and forwards approximately 25 to 30 inmate money vouchers on a daily basis and does not track the purpose of the vouchers. *Id*., 23-2 Ex. 1.

Likewise, Mary Rose, Mail Room Supervisor, avers that she has no personal recollection of Plaintiff submitting certified mail on November 19, 2012. ECF No. 23-4, Ex. 3.  She indicates that all incoming and outgoing mail received in NBCI mail room is processed in accordance with Maryland Department of Public Safety and Correctional Services policies. *Id.* She indicates that on November 19, 2012, Plaintiff was designated as indigent.[3] *Id.*  Indigent inmates wishing to send mail certified must demonstrate that the court or other parties require the document be sent certified. *Id.* NBCI inmates are directed to contact case managers in order to verify the need to mail the documents certified. Rose states that although she has no independent recollection of

---

[2] He indicates that he is missing copies of ARPs NBCI-0731-13, NBCI 0291-13, NBCI 0047-12, NBCI 2074-13, NBCI 2729-12, his appeal to the Commissioner, and IGO response/decisions #2013 1538, 2013 1539.  Ultimately, Plaintiff was able to obtain the bulk of these documents and submitted them in support of his supplemental opposition.  ECF No. 26.
[3] Plaintiff disputes that he should have been designated as indigent on this date.

Plaintiff's mailing on November 19, 2012, normal procedure would have been to review the inmate's bank account prior to sending any mail out certified. *Id*.

Scott Oakley, Executive Director of the IGO, states that Plaintiff filed three grievances raising complaints about the handling of his mail. ECF No. 23-5 at 2. IGO No. 2013 1538 was filed on September 3, 2013, as an "appeal from the disposition of ARP-NBCI-2729-12" wherein Plaintiff complained that NBCI staff improperly interfered "with his incoming and outgoing mail since March 2012." *Id*. The IGO dismissed this grievance on October 29, 2013, finding Plaintiff failed to properly exhaust the institutional ARP process. *Id*.

IGO No. 2013 1539, filed on September 3, 2013, was an "appeal from the disposition of ARP NBCI-0731-13" wherein Plaintiff complained that NBCI staff "improperly opened an item of incoming 'legal mail' addressed to him from the 'National Legal Professional Associates.'" *Id*. at 3. The IGO administratively dismissed this grievance on September 19, 2013, finding that Plaintiff failed to properly exhaust the ARP process. *Id*.

IGO No. 2013 1540 was also filed on September 3, 2013, as an "appeal from the disposition of ARP NBCI-2074-13" wherein Plaintiff claimed that on July 25, 2013, NBCI staff returned legal mail to him, opened, which he submitted for mailing on November 19, 2012. On October 29, 2013, the IGO dismissed this grievance, finding again that Plaintiff had failed to exhaust the ARP process concerning this claim. *Id*.

Standard of Review

A.     Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243

(4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the Complaint in light of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Nonetheless, the Complaint "does not need 'detailed factual allegations'" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Thus, a Complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id*. 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678.


B.     Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The

court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A.     Respondeat Superior

Plaintiff's complaint against Defendant Warden Bobby Shearin is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (holding "there is no respondeat superior liability under §1983.")

Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). In order to demonstrate liability of supervisory officials, there must be evidence (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Defendant Shearin that resulted in a constitutional injury, and accordingly, his claims against him shall be dismissed.

B.     Failure to Exhaust Administrative Remedies

Defendants maintain that the case should be dismissed in its entirety because Plaintiff failed to exhaust his available administrative remedies. ECF No. 23 at 12. The Prisoner Litigation

Reform Act (PLRA) provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to asserting a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 2384. Having done that, a

prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners "pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process." *Chase*, 582 F. Supp. 2d at 530; *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Plaintiff indicates that he made every effort to exhaust administrative remedies but that correctional staff failed to process his claims in a timely fashion, and/or misinterpreted his filings, resulting in confusion regarding which ARPs were being appealed. ECF No. 1 at 9-10. The Court cannot say, on the record before it, that Plaintiff failed to exhaust "available" remedies. As such, the Court shall consider the merits of Plaintiff's claims.

C. Legal Mail

Prisoner claims regarding legal mail are typically analyzed as "access to court" claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations

of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id.* at 354. Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but instead to have access to the tools necessary "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id***.** at 355.

Plaintiff indicates that his reply to the response filed in his federal petition for writ of habeas corpus case[4] was delayed. He indicates he submitted the reply for mailing on November 19, 2012, and it was returned to him opened, never having been mailed, on May 25, 2013. ECF No. 1. He states that the Court was without his reply when it decided to stay the proceedings. He appears to point to the staying of his proceedings as an "injury" arising from the Court's failing to receive his response. Plaintiff admits that he was advised by the Court on December 17, 2012, that his response had not been received. *Id; See also Short v. Shearin*, RWT-12-2476, ECF No. 10 (D. Md).

A review of the docket in Plaintiff's habeas proceeding demonstrates that on November 8, 2012, an Order was entered directing Plaintiff to provide an explanation as to why the Petition should not be dismissed as time-barred. *See Short v. Shearin*, RWT-12-2476, ECF No. 9 (D. Md.).

---

[4] *See generally, Short v. Shearin*, RWT-12-2476 (D. Md.).

On December 17, 2012, Plaintiff's case was stayed. *See Short v. Shearin*, RWT-12-2476, ECF No. 10 (D. Md.). On December 18, 2012, the Court received what was docketed as Plaintiff's "Response" which consisted of a total of 78 pages of argument and exhibits, which was construed as a reply to Respondent's response. *See Short v. Shearin*, RWT-12-2476, ECF No.11 (D. Md.). On January 7, 2013, the Court received Plaintiff's "Request for Time Extension and Reason for Delay of Response to Respondent" wherein he advised that he submitted his reply to correctional staff on November 19, 2012, and that on December 3, 2012, he mailed a second copy of his reply to the Court. *See Short v. Shearin*, RWT-12-2476, ECF No. 12 (D. Md.). He stated his belief that correctional staff was intentionally interfering with his mail. *Id.* Plaintiff's 21-page reply with 62 pages of attachments was also docketed on January 28, 2013. *See Short v. Shearin*, RWT-12-2476, ECF No. 13 (D. Md.).

Contrary to Plaintiff's assertion, his habeas case was stayed, not due to any lack of pleading on Plaintiff's part, but rather because of changes in habeas law regarding calculation of the statute of limitations. *See Short v. Shearin*, RWT-12-2476, ECF No. 10 at 4 (D. Md.) (order staying the case). Plaintiff's case was stayed as other counselled cases raising similar issues which bore upon the calculation of the timeliness of Plaintiff's filing were pending before the Court. *Id.* Had the Court received Plaintiff's Reply in a timely fashion, the matter would nonetheless have been stayed pending resolution of the other matter. Plaintiff's habeas petition was dismissed on October 25, 2013, as untimely. *See Short v. Shearin*, RWT-12-2476, ECF No. 18-19 (D. Md.).

Plaintiff has not stated injury or specific harm which he suffered as a result of the alleged mishandling of his outgoing legal mail. Plaintiff can offer no evidence of injury as he was in fact not injured by the delay. Plaintiff was timely advised by the Court that it had not received his

Reply. Thereafter, he successfully filed his Reply, which was considered by the Court in determining that his Petition was untimely filed. Thus, his claim must fail.

Plaintiff's claims relating to incoming legal mail being opened outside of his presence will also be dismissed. Although Plaintiff alleges a pattern of interference with his mail, the record evidence demonstrates only isolated instances of Plaintiff's mail being handled outside of adopted policies. Isolated instances of mishandling of inmate mail do not constitute valid constitutional claims. *Buie v. Jones,* 717 F.2d 925, 926 (4th Cir. 1983) ("isolated instances, however, did appear to have been contrary to the policy of the Jail and to have been either accidental or the result of unauthorized subordinate conduct and were not of constitutional magnitude."). Occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) ("We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action."); *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir. 1990) ("Defendants admitted to opening one piece of Smith's constitutionally protected legal mail by accident. Such an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or access to the courts, does not give rise to a constitutional violation.")

Additionally, Plaintiff has advised of no actual injury or specific harm which he has suffered assuming his incoming legal mail was opened outside of his presence on two occasions.[5] The only evidence Plaintiff offers of injury are conclusory statements that the conduct of mail room staff violated his constitutional rights. Without greater specificity, Plaintiff's claims fail.

---

[5] Additionally, Defendants argue, without supplying any evidence in support of their argument, that the mail from the Treasury Department does not satisfy the definition of legal mail and as such it was permissible, under DOC regulations, to open same outside of Plaintiff's presence. They also indicate, without any supporting evidence, that the status of the mail from the National Legal Professional Associates was unclear to mail room staff. What remains undisputed and contradicts Plaintiff's assertion, is that over a thirteen month period he received 75 pieces of mail classified as legal mail that were handled properly. ECF No. 23, Ex. 3.

D.      Administrative Remedy Process

To the extent Plaintiff alleges that Defendants Woolford and Wilt violated his constitutional rights in the processing of his administrative grievances, his claim likewise fails. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner.  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id*. at 681.  To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id*. at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that Defendants Woolford and Wilt did not satisfactorily investigate or respond to the Plaintiff's remedy requests, Plaintiff's claim fails as he has not alleged, much

less demonstrated, any injury as a result of the alleged failure to sign off or process his ARPs or grievances to the IGO.

Further, to the extent Plaintiff alleges that correctional staff failed to follow written directives concerning either the processing of his mail and/or his grievances, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[6]

Conclusion

For the reasons stated, summary judgment is granted in favor of Defendants.[7] A separate Order shall be entered in accordance with this Memorandum Opinion.

Date:  July 17, 2014

_____/s/_____
Roger W. Titus
United States District Judge

---

[6]Regardless of any alleged violations of internal regulations, failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

[7]Having found no constitutional violation, the Court need not address Defendants' claim of qualified immunity.